UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| IVAN M. SUZMAN, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| ) | Civil No. 05-192-P-S |
| v. ) | |
| ) | |
| ADOLPH CRISP, et al., ) | |
| ) | |
| Defendants ) | |

**ORDERS AND RECOMMENDED DECISION ON MOTION BY
DEFENDANT RAYELLA BOOTON-BROWN (DOCKET NO. 27)**

In his original complaint (Docket No. 1) Ivan Suzman relates that he has advanced Young-Onset Parkinson's Disease and complains of the defendants' fraud and deceit apropos their 'care' of him after he sought Defendant Rayella Booton-Brown's help in the wake of a personal crisis. The other defendants to this action are Adolph Crisp, William L. Brown, III, and Casa Agape Ministries.[1] Suzman has filed an amended complaint to add an additional (twelfth) count charging Booton-Brown with fraud, deceit, and attempted extortion vis-à-vis a January 12, 2006, receipt she sent Suzman for services rendered and requesting the sum $60,375. (Docket No. 14.) Herein I address a single pleading by Booton-Brown (Docket No. 27) which is: (1) a motion to strike the amended complaint, (2) a motion for a more definite statement, (3) a motion to dismiss

---

[1] I entered a scheduling order in this action on June 21, 2006. (Docket No. 44.) That order sets December 13, 2006, as the deadline for filing dispositive motions. The motion practice at the commencement of this litigation has been intense, but poorly focused, so far resulting in forty-four docket entries with no party having as yet filed an answer to the complaint that was filed last October. However, I believe it important to have a scheduling order in place in order to move forward and thus the scheduling order was entered prior to the receipt of any answers. I have now set a final deadline for the parties who have appeared in this case to file their answers.

for failure to state a claim, and (4) a motion for an extension of time in which to file an answer.

## *Discussion*

### *Summary of Relevant Complaint Allegations*

According to Suzman's allegations, he contacted Booton-Brown, a resident of Oklahoma,[2] by telephone on February 5, 2005, after he was assaulted by his personal care assistant in Maine. In this conversation Booton-Brown seemed to be very sympathetic and consoled Suzman, telling him that she would fly to Maine the next day to begin caring for him personally and indicating that she was coming on a mission to rescue him. Apparently in this conversation, Booton-Brown indicated that there was only one way for that rescue to happen and it would require that Suzman sell his home and move to Tulsa, Oklahoma. Reluctantly, Suzman acquiesced to Booton-Brown's offer to come and assist him and Booton-Brown arrived at Suzman's Portland, Maine home on February 6, 2005.

Upon her arrival Booton-Brown convinced Suzman that God had told her to come to Maine to save him and that God had indicated that there were too many demons in Suzman's home so he needed to sell his home and go back to Oklahoma with her. Booton-Brown also insisted that all decisions about Suzman's future were to be made by her and Adolph Crisp (whom Suzman did not know), with limited input by Suzman. Among other things, Suzman alleges that Booton-Brown, in conspiracy with Crisp, convinced Suzman to fly Crisp and her son, Derik Brown (who I am guessing is Defendant William Brown) to Maine to assist with Suzman's care and asked Suzman to pay the airfares. On April 29, 2005, the four flew to Tulsa, Oklahoma.

---

[2]   Apparently Booton-Brown and co-defendant William Brown also maintain a residence in Nashville, Tennessee.

Upon Suzman's arrival an entire's year rent was demanded by Crisp for a house owned by Crisp, yet even though Suzman paid the sum, he was not allowed to occupy this residence but was forced to sleep on Crisp's kitchen floor on a box spring, much to the detriment of Suzman's fragile health. Suzman reports that he was afraid and alone in the house, having learned that a person had died on the living room couch of Crisp's house the night prior to Suzman's arrival. Meanwhile, Booton-Brown was acting like a complete stranger.

Suzman, very ill, had no choice but to leave and got to the nearest safe haven: he flew to Florida where his elderly father lives. His father was unable and unwilling to care for Suzman and Suzman was hospitalized because of his ill health. He was then placed in a nursing home where he almost died. After ten days he contacted Maine friends who helped him get back home, although he had no home or possessions. He spent two months living " humiliatingly out of a bag."

The amended complaint alleges that on January 12, 2006, Booton-Brown mailed Suzman a "fraudulent invoice for service rendered, by her, in the capacity as a doctor, counselor, cook, nurse, teacher, etc. (See Exhibit 22) for $60,375.00."

*Pending Motions*

**(1) Booton-Brown's motion to strike the amended complaint [3]**

---

[3]    This pleading was actually filed on behalf of Booton-Brown by an Oklahoma attorney who filed a motion for leave to appear pro hac vice without local counsel. On May 12, 3006, I denied this motion as our local rules and practice do not allow for an exception to the requirement of local counsel. (See Docket No. 30.) I did not strike the pleading, however, and the court is treating it as if it was filed pro se by Booton-Brown. I note that the pleading treats the amended complaint (Docket No. 14) as the operative pleading even though Suzman never received leave to file an amended complaint and it was filed after Booton-Brown filed her first motion to dismiss which has already been denied by the court. Going forward Docket No. 14 will be the operative pleading, as it appears that Booton-Brown and the other defendants have adopted it as such.

In the lengthy portion of this motion that asks the court to strike the amended complaint Booton-Brown's argument is not directed at Suzman's, rather delimited, proposed amendment to his original complaint which pertains to Booton-Brown's January 2006 reimbursement demand. Rather, her efforts are directed at the complaint as a whole.

On this score, Booton-Brown devotes over five pages of her motion to an argument that Suzman has not pled his allegations of fraud sufficiently as required by Federal Rule of Civil Procedure 9(b). Somewhat counter-intuitively (given her argument that there is not enough detail in the complaint) she argues that Federal Rule of Civil Procedure 12(f) allows the court to strike any redundant, immaterial, impertinent, or scandalous matter from the complaint. (Booton-Brown Mot. at 14.) It is clear from her factual recitation that Booton-Brown has a different version of events than does Suzman (see id. at 2-13) but she does not identify what allegations she considers "redundant, immaterial, impertinent, or scandalous." Rather she turns immediately to identifying areas in the complaint which are not pled with particularity. (Id. at 14-15.)

Booton-Brown sets forth two "non-canonical" grounds for striking the amended complaint. First, she argues that there is a serious concern that Suzman made a misrepresentation to the court on his motion to proceed in forma pauperis. (Id. at 19.) She contends that On April 29, 2005, Suzman netted almost $200,000 from the sale of his Portland, Maine residence. (Id.) She wonders how he could profess to be broke on his application to proceed in forma paupers. (Id.) When Suzman filed his motion to proceed without paying the filing fee, I entered an order reserving ruling on the request and indicated that Suzman must supplement the application to describe the source of income

4

that he indicated he received in the preceding twelve months. (See Docket No. 3.) Suzman filed a second motion representing that his income derived from a foundation source and disability entitlement (see Docket No. 4), and I granted that motion. Booton-Brown's unsubstantiated suspicions provide no basis for me to revisit this determination, let alone a reason to strike Suzman's amended complaint.

Booton-Brown's second "non-doctrinal" ground for striking the amended complaint also rests on speculation. She suggests that one "Ms. Gullatt" is undertaking the unauthorized practice of law on Suzman's behalf. (Id. at 19.) Citing the return address on the summons issued to Booton-Brown-- which reads "Ivan M. Suzman – Pro Se Litigant; C/O Jean Gullatt, POA; 1A Smith Road; Windham, ME 04062" -- Booton-Brown speculates that the POA stands for power of attorney and charges that Gullatt is "in effect, practicing law without a license, even to the point of listing herself as Mr. Suzman's 'attorney in fact.'" (Id. at 11.) Booton-Brown further cites a June 21, 2005, letter to Attorney James Goodwin which Gallant copied to the Editor of Tulsa World, the Attorney General of Oklahoma, and the District Attorney of Tulsa County, a tactic Booton-Brown believes is unbecoming to an attorney. (Id. at 20.) Booton-Brown asserts that Gallant is "'gumming up the works'" leaving it to "other lawyers ... to 'unscramble' chaotic and inscrutable pleadings in order to respond to them in an orderly and coherent manner." (Id.)[4] The pleadings filed by Suzman are all signed by Mr. Suzman on his

---

[4] Counsel who drafted this motion on Booton-Brown's behalf and who did not attempt to comply with the local rules concerning pro hac vice appearances should not cast stones in a glass house. In my view, this meritless motion has done nothing but gummed-up the works in an action that is quickly becoming the consistency of well –chewed Bazooka. It has taken me no little effort to unscramble counsel's own "inscrutable" arguments.

Furthermore, after arguing that Gallant is practicing law without a license, counsel then details how she is offending the Oklahoma Rules of Professional Conduct. (Id. at 21-22.) These are rules to which Gallant, a Maine resident, is not subject because she is not an attorney let alone an attorney subject to the Oklahoma rules governing the practice of law.

5

own behalf and I will not credit Booton-Brown's second "non-doctrinal" reason to strike his pro se amended complaint with further discussion.

Accordingly, I **DENY** this motion to the extent that it seeks to strike the amended complaint in parts or in its entirety.

### (2) Booton-Brown's motion for a more definite statement

Booton-Brown argues that it is not possible to ascertain from the complaint which fraud and deceit is alleged to have been perpetrated by which defendant. (Id. at 15.) I disagree; Suzman's complaint is quiet clear in identifying which defendant did which act. Next, Booton-Brown complains that Counts Six through Eleven are verbatim copies of each other with the only difference being the dates on which the alleged fraud and deceits occurred. (Id.) However, Suzman attached the correspondence referred to in each of these counts to his original complaint (see Docket No. 1, Ex. 21) and Booton-Brown is well apprised of what Suzman considers to be her fraudulent and deceitful acts apropos Counts Six through Eleven. Booton-Brown complains that the allegations of fraud and deceit in Counts One through Five and Twelve are not particular enough and are "rambling and at times incoherent." (Booton-Brown Mot. at 16.) This contention is meritless; the allegations certainly provided a sufficient basis on which to formulate and articulate a meaningful answer. The remaining argument in Booton-Brown's motion for a more definite statement pertains to damage concerns. They might be fairly described as nitpicking. The bottom line is that nothing in Rule 9(b) requires that damages be pled with such specificity. I **DENY** the motion for a more definite statement.

### (3) Motion to dismiss for failure to state a claim[5]

In the portion of her motion devoted to the argument that the complaint should be dismissed for failure to state a claim, Booton-Brown reiterates her Rule 9(b) argument (id. at 24) which I have already rejected. She then sets forth two paragraphs summarizing Oklahoma law on the tort of fraud and deceit (not seeming to recognize that a large portion of Suzman's allegations pertain to representations made in Maine), again complaining about a failure of Suzman to plead with particularity. (Id. at 24-25.) Finally, Booton-Brown complains that there are insufficient allegations apropos damage claims. Such specificity of damages allegations, I have already indicated, is not a requirement of Federal Rule of Civil Procedure 9(b) and, I now note, not a requirement of Federal Rule of Civil Procedure 8. I find this Booton-Brown's request for dismissal to be meritless and **RECOMMEND** that the Court **DENY** the motion to dismiss.

### (4) Motion for an extension of time to file an answer

I **GRANT** Booton-Brown's motion for an extension of time to file an answer to the amended complaint which is now the operative pleading in the action.

### *Conclusion*

For the reasons sent forth above, I **DENY** Booton-Brown's motions to strike and for a more definite statement, I **GRANT** her motion for an extension of time to file her answer, and **RECOMMEND** that the Court **DENY** the motion to dismiss. Answers for all defendants who have appeared in this action will be due by September 1, 2006, or ten

---

[5] Booton-Brown has already filed a motion to dismiss arguing the merits of the action and setting forth her version of the facts. I struck that motion because it was not cognizable as a motion to dismiss (see Docket No. 24), suggesting that she could move for summary judgment on the basis of a factual record in a pleading that conforms with Federal and Local Rules 56. I also set May 10, 2006, as her deadline for answering the complaint. As indicated below, I have now granted her a final extension of the answer deadline.

days after the district court judge rules upon the pending recommended decisions,

whichever occurs later, if this case remains on the docket.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

July 12, 2006.

/s/Margaret J. Kravchuk  
U.S. Magistrate Judge